UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEISA WHITTUM, *et al.*,<br><br>  Plaintiffs,<br>v.<br>UNIVERSITY MEDICAL CENTER<br>OF SOUTHERN NEVADA,<br><br>  Defendant. | Case No. 2:21-cv-01777-MMD-EJY<br><br>ORDER |

**I.   SUMMARY**

Plaintiffs Leisa Whittum, Nicole Kilburn, and Sara Sanguinetti ("Plaintiffs")[1] sued Defendant University Medical Center of Southern Nevada ("UMC") for injuries stemming from a data breach of UMC's systems in June 2021. (ECF Nos. 15 at 3, 59.) Before the Court are Plaintiffs' renewed motion to remand (ECF No. 61)[2] under the local controversy and interest of justice exceptions of the Class Action Fairness Act ("CAFA"), and motion to compel (ECF No. 62).[3] Plaintiffs filed the renewed motion after completion of limited jurisdictional discovery for class citizenship. As further explained below, the Court finds

---

[1] Sara Sanguinetti was added as a Plaintiff after consolidation. (ECF No. 59.)

[2] In the last order, the Court granted class citizenship discovery because pertinent facts bearing on jurisdiction were disputed and additional citizenship discovery was necessary to determine whether the CAFA exceptions applied. (ECF No. 52 at 9-10.) The Court also granted the parties leave to file renewed motions within 30 days of the conclusion of jurisdictional discovery. (*Id*. at 10.) Plaintiffs subsequently filed their renewed motion to remand with exhibits. (ECF Nos. 61, 63, 64 (Sealed).)

[3] The parties filed responses and replies to the pending motions. (ECF Nos. 67, 70, 71.)

that remand is proper under both CAFA exceptions and will grant the renewed motion to remand and deny the motion to compel.[4]

## II. DISCUSSION

The Court rejects UMC's arguments as to class size and standing because Plaintiffs are relying on UMC's own data to formulate their proposed class, and Plaintiffs suffered concrete, separate injuries from the risk of future harm that are sufficient for standing. The Court next grants remand under CAFA's local controversy exception because Plaintiffs have demonstrated that greater than two-thirds of proposed class members are Nevada citizens. Alternatively, the Court finds that discretionary remand is appropriate because more than one-third of proposed class members are Nevada citizens, and the interests of justice warrant remand. Finally, the Court denies Plaintiffs' request for attorney's fees and costs because Plaintiffs have not met the stringent standard for attorney's fees and have failed to comply with local rules.

### A. Objections to Class Size & Standing

As a preliminary matter, UMC argues that remand is improper because Plaintiffs' proposed class size, based on the number of notices UMC sent and the addresses in these notices, is "artificially inflate[d]." (ECF No. 67 at 7.) Specifically, UMC contends that class size based on UMC notices is unreliable because (1) UMC was overinclusive and provided notice to "dramatically more people than could have been impacted" by the breach, and (2) some class members do not have standing because they are not data breach victims, and their information was not accessed during the breach. (*Id*. at 4-9.) The Court disagrees and finds that potential breach victims have standing, and the proposed class size is appropriate for citizenship determinations.[5] *See Brinkley v.*

---

[4]The Court adopts the background section from its previous order and will not repeat the information here. (ECF No. 52 at 2.) However, the Court notes that since the issuance of the last order, the parties have completed jurisdictional discovery for class citizenship, and the Court has granted consolidation of this case and another case, 2:21-cv-01779-JAD-EJY pertaining to UMC's data breach. (ECF No. 59.)

[5]In their reply, Plaintiffs argue that the Court should "set aside UMC's belated attempt to argue aspects of Article III jurisdiction" because UMC did not file a renewed

*Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (explaining that to determine class citizenship, the court must first determine the size of the class as a whole) (citation omitted).

The Court is unpersuaded by UMC's first argument. Plaintiffs' proposed class size is based on the total number of notices that UMC sent to victims or potential victims of the breach, which is approximately 1.3 million. (ECF No. 61 at 8-9, 13.) To the extent this figure is overinclusive, that defect is a result of UMC's choices that it purposefully and strategically made. (*See* ECF No. 67 at 9 (UMC explaining that "in the interest of providing notice and opportunity to mitigate for any individuals that could have been impacted, UMC proceeded with a strategy to *purposefully* provide notice and identity theft protection to dramatically more people than could have been impacted").) The Court finds it unreasonable and unfair for UMC to now challenge class size when the class size was based on data that UMC itself provided to Plaintiffs. Moreover, UMC offers no additional information or clarification about the breakdown of the actual number of people UMC should have informed about the breach. The Court therefore rejects UMC's first argument as to class size.

The Court is likewise unpersuaded by UMC's second argument that the class size is "inflated" because it includes individuals who were *potentially* impacted by the breach but have suffered no injury because their information was not misused.[6] (*Id*. at 4-7.) "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion*

---

motion to dismiss after jurisdictional discovery. (ECF No. 70 at 4.) The Court disagrees and will consider UMC's arguments because federal courts "are required sua sponte to examine jurisdictional issues such as standing." See Bernhardt v. Cnty. of L.A., 279 F.3d 862, 868 (9th Cir. 2002) (citations omitted).

[6]In the FAC, Plaintiffs proposed a nationwide class, defined as "[a]ll persons whose Personal Data was procured or potentially procured by a third party as a result of the Data Breach due to UMC's failure to secure its internal systems of record." (ECF No. 15 at 9.) Plaintiffs also proposed a Nevada class, defined as "[a]ll residents of the State of Nevada whose Personal Data was procured or potentially procured by a third party as a result of the Data Breach due to UMC's failure to secure its internal systems of record." (*Id*. at 10.)

*LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 2210 (citations omitted).[7] However, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm [for standing]—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id*. at 2210-11. Lower courts have found that the time and money spent mitigating and protecting from future identity theft, along with the emotional distress the plaintiff suffers from "the knowledge of the substantial risk of identify theft," are sufficient, concrete injuries for standing. *See Ortiz v. Perkins & Co*., Case No. 22-cv-03506-KAW, 2022 WL 16637993, at *4 (N.D. Cal. Nov. 2, 2022) (citing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692-94 (7th Cir. 2015); *Clemens v. ExecuPharm Inc*., 48 F. 4th 146, 155-56 (3d Cir. 2022)); *see also TransUnion*, 141 S. Ct. at 2211 n.7 (stating that a "plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm").

To start, Plaintiffs have demonstrated standing for monetary damages. Named Plaintiff Whittum[8] alleges that she spent a substantial amount of time trying to mitigate the effects of the data breach, including "investigating her financial accounts for evidence of fraud, and procuring her consumer disclosures from several credit reporting agencies" to investigate for fraudulent activity. (ECF No. 15 at 5.) Whittum spent money enrolling in

---

[7]In *TransUnion*, the United States Supreme Court held that 6,332 class members lacked standing for the reasonable-procedures claim because TransUnion "did not provide those plaintiffs' credit information to any potential creditors" and the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." 141 S. Ct. at 2209-10, 2214. This case is distinguishable from *TransUnion* because it is *unclear* whether class members' personally identifiable information was actually disclosed or disseminated to third parties, but the potential dissemination of Plaintiffs' private information yielded separate, concrete injuries, as discussed above. (*See* ECF Nos. 15 at 5-6, 67-1 at 2 (UMC's notices warned that "[a]ffected information, potentially including yours, was compromised by a well-known group of cybercriminals that seek to use the information for commercial gain").)

[8]"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Ollier v. Sweetwater Union High Sch. Dist*., 768 F.3d 843, 865 (9th Cir. 2014) (citation omitted).

4

identity theft protection services and mailing documents to credit reporting agencies. (*Id*.) She also suffered financial losses from having to wait to refinance her home due to the security freezes on her credit reports. (*Id*. at 6.) Additionally, Whittum alleges that she suffered stress, worry, anxiety, and hesitation from the feared risk of future fraud or theft. (*Id*.) Because Plaintiffs undertook substantial mitigation and remedial measures to prevent fraud, incurred out-of-pocket expenses, and suffered emotional distress from the anticipation of fraud, the Court finds that Plaintiffs have alleged concrete, separate injuries for standing from the risk of future harm. *See Ortiz*, 2022 WL 16637993, at *4; *see also TransUnion*, 141 S. Ct. at 2204 (noting that "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

Plaintiffs have also demonstrated standing for injunctive relief. Named Plaintiff Kilburn alleges that she has already received two notices of attempts to open credit cards in her name after the data breach. (*Id*.) The compromised data from the breach also includes highly sensitive demographic, clinical, and financial information, such as a person's social security number—the exact type of information that hackers and cybercriminals use to commit fraud or identity theft. (ECF No. 67-1 at 2.) *See Smallman v. MGM Resorts Int'l*, Case No. 2:20-cv-00376-GMN-EJY, 2022 WL 16636958, at *6 (D. Nev. Nov. 2, 2022) (finding that the plaintiffs demonstrated substantial risk of future harm because the "criminals perpetrated ransom attacks against them or attempted to sign into their personal accounts" and the stolen information gave hackers the means to commit future identity fraud or theft) (citations omitted); *see also Greenstein v. Noblr Reciprocal Exch*., 585 F. Supp. 3d 1220, 1227 (N.D. Cal. 2022) (finding that disclosure of highly sensitive personal information such as social security and credit card numbers "increase[s] the risk of immediate future harm to the plaintiff"). Because Kilburn has already received several fraud alerts and the stolen data provides hackers with the means to commit fraud, the Court reasonably infers that the risk of harm is sufficiently imminent and substantial for standing. *See Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384,

388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints"). Because potential breach victims have standing for monetary damages and injunctive relief, they may be included in the proposed class and the class size is appropriate.[9]

### B. Mandatory Remand Under CAFA's Local Controversy Exception 28 U.S.C. § 1332(d)(4)

The parties' primary dispute focuses on whether Plaintiffs have demonstrated that more than two-thirds of class members are Nevada citizens under CAFA's local controversy exception. *See* 28 U.S.C. § 1332(d)(4)(A). Plaintiffs argue that remand is mandatory because calculations from UMC's dataset show that over 90 percent of the breach notifications were sent to Nevada addresses. (ECF No. 61 at 3, 8.) UMC counters that (1) the listing addresses on the notices are not indicative of citizenship, and (2) over 500,000 of the addresses "cannot be relied upon to convey any information regarding citizenship" because they were returned as undeliverable, pertained to minors, or have out-of-state addresses. (ECF Nos. 67 at 11, 67-3 at 4.) The Court disagrees and finds that Plaintiffs have satisfied the citizenship requirement.

The burden of proof for establishing the applicability of an exception to CAFA jurisdiction rests on the party seeking remand, which is often the plaintiff. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). However, the burden on a plaintiff "should not be exceptionally difficult to bear." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013). Where there are disputed facts, the district court must make factual findings for jurisdiction under a preponderance of the evidence standard before

---

[9]In the response, UMC also argues that there is a "lack of any evidence of any negative consequence" since there are "presently no known instances of any individuals that experienced any loss or diminution of any interest based upon any unauthorized access to UMC data." (ECF No. 67 at 10.) To the extent UMC is trying to allege that there are no injuries from the breach, this conclusory assertion is highly disputed and premature since Plaintiffs allege that they have suffered emotional distress, incurred out-of-pocket expenses, received notifications of fraud attempts, and spent time and energy mitigating and protecting against future fraud. (ECF No. 15 at 5-6.)

granting remand. *See id.* at 883-84 (citation omitted). While a "jurisdictional finding of fact should be based on more than guesswork[,]" district courts are generally "permitted to make reasonable inferences from facts in evidence." *Id*. at 884, 886 (citation omitted).

Under CAFA's local controversy exception, a district court *must* decline to exercise jurisdiction:

> (i) over a class action in which—
>     (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>     (II) at least 1 defendant is a defendant—
>         (aa) from whom significant relief is sought by members of the plaintiff class;
>         (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>         (cc) who is a citizen of the State in which the action was originally filed; and
>     (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

*See* 28 U.S.C. § 1332(d)(4)(A). As explained below, the Court finds that Plaintiffs have satisfied this exception.

The Court is unpersuaded by UMC's first argument and finds that the addresses in UMC's notices are indicative of class citizenship.[10] As a threshold matter, the Ninth Circuit has explicitly held that the residences on the notices provide, at a minimum, *some* evidence of class members' domiciles.[11] *See Adams v. W. Marine Prods., Inc*., 958 F.3d 1216, 1221 (9th Cir. 2020) (citation omitted). Other evidence in the record further supports that the notice addresses establish domicile. *See King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 878-79 (9th Cir. 2018) (explaining that "a district court should consider the

---

[10]The Court notes that it has already addressed this argument in its prior order. (ECF No. 52 at 9.) Nonetheless, the Court will address the issue, again, since UMC is trying to revive the argument.

[11]A person's domicile is their "permanent home" where (1) they reside, (2) with the intention to remain or return. *See Adams*, 958 F.3d at 1221 (citation omitted).

7

entire record to determine whether evidence of residence can properly establish citizenship") (quotation marks and citations omitted). To start, the addresses are fairly recent, particularly in relation to the time of removal and the date of the breach. *See Adams*, 958 F.3d at 1221 ("Citizenship is determined as of the date the case became removable") (quotation marks and citation omitted). The data breach occurred on June 14, 2021, UMC began notifying victims and potential victims in August 2021, and the case was removed from state court in September 2021, so the separation between these events was a mere matter of months. (ECF Nos. 1, 15 at 3-4, 67-1 at 2.)

Next, UMC admits that it used a third-party vendor to mail the notices and standardize and validate the addresses "using USPS Coding Accuracy Support System and National Change of Address Validation." (ECF No. 63-5 at 5-6.) Notably, UMC admits that only 236,435[12] out of 1.3 million notices[13] were returned as undeliverable—which is only 18 percent of the total mailings. (ECF Nos. 67 at 11, 67-3 at 4.) This low percentage of undeliverable notices suggests that UMC's validation system was effective, and the notice addresses were overall accurate. Because a person's domicile, once established, continues in that state and UMC has failed to rebut this presumption, the Court finds that the notice addresses are indicative of class citizenship and may be used to determine the percentage of class members who are Nevada citizens. *See id*. (explaining that a plaintiff "may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change") (citation omitted); *see also Mondragon*, 736 F.3d at 886.

The Court is likewise unpersuaded by UMC's second argument. After jurisdictional discovery, Plaintiffs calculated that approximately 90 percent of all completed mailings were sent to persons in Nevada—a figure that significantly surpasses the two-thirds

---

[12]There appears to be a typo in the response, where UMC claims that 206,435 notices were returned as undeliverable. (ECF No. 67 at 11.) This figure is based on Keith Slade's declaration, where Slade states that 236,435 notices were returned as undeliverable. (ECF No. 67-3 at 4.)

[13]UMC does not dispute this total figure provided by Plaintiffs. (ECF No. 67.)

threshold for CAFA's local controversy exception. (ECF No. 61 at 3, 8, 17, 19.) *See* 28 U.S.C. § 1332(d)(4). UMC disputes the accuracy of this figure and argues that over 500,000 of these addresses are unreliable for citizenship. (ECF No. 67 at 11.) As support, UMC included a declaration from Keith Slade,[14] the hospital's privacy officer, who claimed that 218,013 UMC notices pertained to mailings to minors, 236,435 notices were returned as undeliverable, and 120,687 notices used out-of-state addresses.[15] (ECF No. 67-3 at 4.) Notably, Slade does not allege that there is any overlap or duplication between these figures or categories. (*Id*. at 2-4.)

Even if over 500,000 addresses are unreliable or from outside of Nevada, which amounts to 44 percent[16] of all addresses, approximately 56 percent of addresses would still be Nevada addresses—a figure that remains substantial and is fairly close to the two-thirds threshold for mandatory remand. However, the Court is unpersuaded by UMC's argument that 218,013 notices are unreliable because they concerned mailings to minors "for whom no data is presented (or potentially available) regarding citizenship of parents or guardians." (ECF No. 67 at 11.) The Court is permitted to make inferences from the

---

[14]In their reply, Plaintiffs argue that the Court should disregard Slade's declaration because he (1) failed to explain his qualifications or establish he has personal knowledge of the facts he attested to, (2) failed to explain his methodologies, and (3) failed to authenticate the documents he relied on in making his conclusions. (ECF No. 70 at 6-10.) The Court rejects Plaintiffs' arguments because Slade can testify as a lay witness since the information in his declaration does not require scientific or technical expertise and is based on his personal knowledge as UMC's privacy officer. *See* Fed. R. Evid. 701, 702. The Court will also infer Slade's personal knowledge from his position as a privacy officer at UMC. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). Finally, the amendments to Fed. R. Civ. P. 56 have eliminated the unequivocal requirement that summary judgment evidence must be authenticated. *See Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016). The Court will therefore consider Slade's declaration.

[15]The Court makes its evidentiary findings based on the current record before the Court. Because Slade does not allege any overlap or duplication between the figures, the Court will consider the figures as separate, independent categories for citizenship calculations.

[16]This figure is derived from the approximately 1,304,594 total individuals that UMC mailed data breach notification letters to. (ECF No. 61 at 7.) In the response and declaration, UMC and Slade do not dispute this total figure and do not provide an alternative total figure for the Court. (ECF Nos. 67, 67-3.)

record, and it is reasonable to infer that most minors would live with their parents or guardians at the listed Nevada addresses. *See Mondragon*, 736 F.3d at 886. Moreover, UMC failed to present any evidence to rebut the continuing domicile presumption to show that the minors' domiciles in Nevada have changed. *See Adams*, 958 F.3d at 1221 (citation omitted). Accordingly, the Court finds that the 218,013 notices to minors should be considered for citizenship. When considered, only 27 percent of addresses are unreliable or from out-of-state, and 73 percent of addresses were mailed to individuals in Nevada—which exceeds the two-thirds threshold for mandatory remand.[17]

Additionally, it is reasonable to infer that the majority of breach and potential breach victims are Nevada citizens, since UMC is a local Las Vegas hospital that services the greater Las Vegas community. (ECF Nos. 15 at 3, 61 at 3, 14.) *See Mondragon*, 736 F.3d at 886. Accordingly, Plaintiffs have satisfied their burden for mandatory remand, which is not exceptionally hard to bear, by demonstrating that more than two-thirds of class members are Nevada citizens. *See Adams*, 958 F.3d at 1221 (citation omitted). They have also satisfied the other local controversy elements because UMC is located in Nevada, UMC's alleged failure to secure their internal systems serves as a significant basis for Plaintiffs' claims, Plaintiffs' principal injuries resulted from a data breach in Nevada, and there are no identical or similar class actions filed before this lawsuit. Thus, the Court grants mandatory remand under CAFA's local controversy exception. *See* 28 U.S.C. § 1332(d)(4).

**C.     Discretionary Remand Under CAFA's Interest of Justice Exception 28 U.S.C. § 1332(d)(3)[18]**

Alternatively, Plaintiffs argue that even if the local controversy threshold is not met, the Court should exercise its discretionary authority to remand under CAFA's interest of

---

[17]These figures are derived from the approximately 1,304,594 total individuals that UMC mailed data breach notification letters to. (ECF No. 61 at 7.)

[18]Because Plaintiffs have proffered sufficient evidence for remand under 28 U.S.C. § 1332(d)(3) and 28 U.S.C. § 1332(d)(4), the Court will deny Plaintiffs' motion to compel UMC to amend its answer to Request For Admission No. 2. (ECF No. 62.)

justice exception since UMC admitted that greater than one-third of the data breach notices were mailed to Nevada addresses. (ECF Nos. 61 at 10, 14-15, 63-3 at 3.) *See* 28 U.S.C. § 1332(d)(3). The Court agrees.

Under CAFA's interest of justice exception, a district court *may*, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action:

> [I]n which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*See* 28 U.S.C. § 1332(d)(3). As explained below, the Court finds that Plaintiffs have satisfied this exception.

As an initial matter, UMC conceded that more than one-third of the data breach mailings were sent to Nevada addresses, so the citizenship threshold for discretionary remand has been satisfied. (ECF Nos. 61 at 10, 14-15, 63-3 at 3.) The Court finds that the other 28 U.S.C. § 1332(d)(3) factors overwhelmingly weigh in favor of remand. First, the asserted claims implicate matters of state interest since the case involves a significant data breach at a local Las Vegas hospital that serves the local Las Vegas community. (ECF Nos. 15 at 3, 61 at 3, 14.) Congress specifically provided exceptions to CAFA "to allow truly *intra*state class actions to be heard in state court." *Adams*, 958 F.3d at 1220 (citation omitted). Second, Plaintiffs are only asserting common law and Nevada statutory

11

claims in their first amended complaint ("FAC"). (ECF No. 15.) Plaintiffs correctly note that other than a hypothetical portion of Plaintiff's negligence claims, the asserted claims "will be governed exclusively by the laws of Nevada." (ECF Nos. 14 at 13, 61 at 15.) Third, the class action was pleaded in a manner that avoids federal question jurisdiction because the FAC does not include any federal claims. In fact, the Court previously found that there was no independent federal question jurisdiction because Plaintiffs' state-law claims did not implicate significant federal issues and were not completely preempted by federal law. (ECF No. 52 at 3.)

Fourth, the case was filed in Nevada—a forum with a significant nexus to the class members, the alleged harm, and the defendant—because UMC is located in Nevada, the UMC breach occurred in Nevada, and Nevada citizens were disproportionately impacted by the breach. Fifth, although some class members are dispersed throughout the country, Plaintiffs' calculations (over 90 percent of class members are Nevada citizens), UMC's own admissions (more than one-third of the mailings were sent to Nevada addresses), and the Court's calculations (at least 73 percent of class members are Nevada citizens after omitting addresses that are unreliable or out-of-state) clearly show that the number of Nevada citizens in the proposed class is substantially greater than citizens from other states. Finally, there are no identical or similar class actions filed before this lawsuit. Accordingly, the 28 U.S.C. § 1332(d)(3) factors clearly support remand under the interests of justice exception because Nevada state courts have a stronger interest in adjudicating this uniquely local matter. *See Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1119 (9th Cir. 2015) (citation omitted) (noting that CAFA exceptions are "intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes") (citation omitted). Thus, Plaintiffs' motion is also granted under CAFA's interest of justice exception. *See* 28 U.S.C. § 1332(d)(3).

///

///

### D.     Request for Attorney's Fees & Costs

Finally, the Court denies Plaintiffs' request for attorney's fees and costs. (ECF No. 61 at 16.) Plaintiffs have not met the stringent standard for attorney's fees because they are not challenging the Court's jurisdiction under CAFA, but instead, arguing that exceptions to CAFA applies. (ECF Nos. 14 at 10, 61 at 5.) *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."). Denial is also appropriate because Plaintiffs failed to comply with LR 54-14 by not filing a separate motion for attorney's fees.

### III.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiffs' renewed motion to remand to state court (ECF No. 61) is granted.

It is further ordered that Plaintiffs' motion to compel (ECF No. 62) is denied.

It is further ordered that Plaintiffs' request for attorney's fees and costs (ECF No. 61 at 16) is denied.

It is further ordered that this case is remanded to the Eighth Judicial District Court of Clark County.

The Clerk of Court is directed to close this case.

DATED THIS 17th Day of April 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE